IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Miguel Antonatos, M.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | **(Jury Trial Demanded)** |
| | ) | |
| Afsar Waraich, M.D. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff complaining of the defendant herein alleges as follows:

1. The plaintiff is a Panamanian citizen with a medical degree who sought employment as a medical doctor within the United States after completing a residency in the state of New Jersey under conditions prescribed by federal law which allow foreign doctors to attain permanent VISA status and practice medicine here when they work under the sponsorship of an American Physician in an underserved area for a certain number of years. These doctors are referred to hereafter as "VISA Doctors."

2. The defendant Afsar Waraich, MD, hereinafter ("Waraich") is a gastroenterologist of Pakistani origin, a resident of Barnwell County, a physician and surgeon, formerly Chief of Staff of the Barnwell County Hospital, hereafter BCH, and the owner of Palmetto Hospitalist Associates P.A., hereafter PHA, which he dominates, solely for his own personal benefit as the *alter ego* thereof. PHA simply attempts to blur the identity of Waraich himself to cover up many of his personal, fraudulent practices.

3. This action arises under 18 U.S.C. § 1595, the Peonage, Slavery, and Trafficking in Persons Act. Jurisdiction exists pursuant to 28 U.S.C. § 1343(4) which gives the district court original jurisdiction over any civil action authorized by law to be commenced by any person to recover damages under any act of Congress providing for the protection of civil rights.

4. Venue lies within the Aiken Division pursuant to 28 U.S.C. § 1381(b) because the parties reside there and most of the events giving rise to this action occurred in the Aiken Division.

5. For the last several years the defendant Waraich has advertised and solicited for foreign doctors to be hired by him and his professional association to work in the Barnwell County Hospital as emergency room physicians, hospitalists and others. The area is

recognized by law as "underserved medical areas" where "VISA Doctors" can come and complete the required service to remain here.

6. In the winter of 2010, the plaintiff responded to a written advertisement for a position, a copy of which is attached hereto as Exhibit A and incorporated by reference herein.

7. This advertisement described the terms and conditions under which a foreign physician or a "VISA doctor" would work and complete his required service and also gave information about the practice's location, work environment and limitation on duties, hours required, working conditions and assistance to be provided to the doctor.

8. The defendant Waraich personally interviewed the plaintiff and had extensive conversations with him in which he verified the promises and representations made in Exhibit A and further himself made promises to induce the plaintiff to sign a contract with his firm and come to Barnwell County Hospital to work for him as an emergency room physician and a hospitalist.

9. Such representations included but were not limited to the following:

    a. The plaintiff would rotate as the hospitalist for two weeks and on the ER Physician for two weeks at the Barnwell County Hospital (BCH).
    b. That his hours as a hospitalist would be limited to 9 am-5 pm Monday through Friday.
    c. That his "on call" hours would be limited as well as the number of patients that he would expect to see.
    d. Plaintiff would be limited to two 24 hour shifts per week except when on weekend call.
    e. Only one 24 hour weekend shift per month would be expected by the plaintiff.
    f. That he would have the assistance of a nurse practitioner in his work.
    g. That his work assignments and responsibilities would be the same as other physicians working with Waraich.
    h. Adequate recovery and sleep periods during ER work would be afforded to plaintiff.
    i. Waraich would ensure plaintiff the necessary amount ER hours required by law to allow the plaintiff Board Certification in Emergency Medicine.
    j. Plaintiff would receive adequate group health insurance coverage within thirty (30) days of his start date.
    k. Plaintiff was personally assured by Waraich that any time he was assigned to work at Aiken Regional Medical Center or other sites outside of BCH, where Waraich also had contracts, that he would receive 100% of the wages paid, but that he was being hired for service at BCH.

10. After plaintiff signed his contract with Waraich's firm and moved his wife to South Carolina to begin his practice, he discovered that all of the promises and representations referred to above were absolutely false and that he was given a job description that

greatly exceeded the duties and responsibilities upon which he had depended upon and expected.

11. Further, he soon learned that other American doctors who performed the same types of services under Waraich's employ were not required to perform duties beyond their job description or work an excessive number of hours, as the plaintiff did.

12. When the plaintiff complained to Waraich, he was reprimanded and threatened that if he did not do everything Waraich asked him to on Waraich's own terms that he was subject to a lawsuit and also subject to having his VISA revoked and being deported.

13. Because of plaintiff's personal and family situation and feeling extreme pressure to follow the malevolent instructions of Waraich, he worked on a continuing basis, far exceeding the requirements that he had been promised and resulting in having to work and travel for long hours, having to see and treat excessively large numbers of patients, being afforded no nurse practitioner or other professional assistance, traveling to other hospitals putting himself and others at risk of accidents as this travel forced him to drive a long distance after being awake over 24 hours without being properly compensated and on a day to day basis carrying out every whim and caprice mandated by Waraich, which resulted in a total loss of any personal life and diminution in his ability to practice medicine together with a constant risk of liability for medical malpractice because of having to perform things out of his specialty and without the proper assistance.

14. In the spring of 2012, plaintiff's conditions further worsened. Barnwell County Hospital declared bankruptcy and terminated the contract with Waraich and his association which now required the plaintiff to travel to Aiken Regional Medical Center and other foreign sites to perform his work without being properly compensated for the same. Also, scheduling plaintiff for far more shifts and hours than every other hospitalist working at ARMC.

15. Throughout the term of his employment the plaintiff realized and recognized that American physicians, similarly situated, were given far more relaxed schedules and treated far better than himself and the other VISA doctors who were his counterparts.

16. When plaintiff found that because of Waraich's actions and the circumstances which existed beyond the plaintiff's control that he would no longer be able to survive in Barnwell, he notified Waraich that he was seeking other employment due to impossibility of performance.

17. Waraich responded by threatening to have Plaintiffs VISA revoked and then later commenced a $250,000 lawsuit against the plaintiff based on contractual claims which Waraich knew were void, invalid and frivolous.

18. Plaintiff was fortunate enough to get another qualified healthcare facility to accept his transfer of his VISA responsibilities but still fears Waraich's interference with the natural immigration process.

19. Plaintiff has learned and court documents prove that Waraich has treated other VISA doctors in the same manner over the last several years, and when plaintiff complained about his treatment, Waraich threatened him and specifically stated that the last VISA physician that didn't comply with his demands was sent back to Africa and sued for $250,000.00.

20. The conduct exhibited by Waraich and described herein constitutes a violation of 18 U.S. C. S. Section §1589 which prohibits peonage, slavery and trafficking in persons.

21. Waraich has knowingly obtained the services of the plaintiff by means of threats, by means of false inducements and has forced the plaintiff to accept his condition of peonage and servitude to his great damage as a reasonable person with the same background and in the same circumstances would also have done.

22. The defendant Waraich has further abused and threatened to abuse law and legal process and to use the immigration and naturalization process as well as the legal process for purposes for which neither was designed in order to exert pressure on the plaintiff and to cause him to accede to Waraich's demands or to take action on his own.

23. Waraich has knowingly benefitted financially from participation in this venture and has done so with a knowing and reckless disregard of the fact that the venture is improper, illegal and violates the policy of the United States of America and the State of South Carolina which prohibits involuntary servitude and peonage.

24. As a direct and proximate result of the violation of the federal statute and the repeated violations of the same in cases with other VISA doctors the defendant Waraich has violated the law and has caused the plaintiff to lose earning capacity and future earnings, has injured and damaged plaintiff's personal and professional reputation, has inflicted upon the plaintiff severe and continuing emotional distress, which is intolerable in a civilized society and is utterly atrocious, and further the plaintiff is entitled to and award of punitive damages against the defendant Waraich for his willful and malicious actions in holding the plaintiff in servitude and peonage and specially harming him.

25. Plaintiff is further entitled to an award of reasonable attorney's fees and costs as provided by the statute.

**FOR A SECOND AND SEPARATE CAUSE OF ACTION AND AS A PENDENTE STATE CLAIM**
(Fraud in the Inducement)

26.  Plaintiff realleges paragraphs 1-27 as if put forth verbatim.

27. That defendant Waraich is engaged in a custom and practice of seeking out foreign physicians, like the plaintiff, and offering them employment which allows the physician to enter contracts, come to South Carolina, and practice with the Plaintiff's company Palmetto Hospitalists Associates P.A., who has control over their VISA and therefore their ability to legally remain in the United States.

28. Plaintiff responded to a written solicitation by Waraich in the Winter of 2010, which described the terms and conditions under which the physician would work and also gave information about the practices location, work environment and limitation on duties, hours required, working conditions and assistance to be provided by the plaintiff's company.

29. Plaintiff responded and subsequently met with Waraich and verified personally with him such information and received his full assurance that such information was accurate and could be relied upon by the plaintiff should he undertake the position.

30. Such representation included, but were not limited to the following:
    a. The plaintiff would rotate as the hospitalist for two weeks and the ER Physician for two weeks at the Barnwell County Hospital (BCH).
    b. That his hours as a hospitalist would be limited to 9 am-5 pm Monday through Friday.
    c. That his "on call" hours would be limited as well as the number of patients that he would expect to see.
    d. The plaintiff would be limited to two 24 hour shifts per week except when on weekend call.
    e. Only one 24 hour weekend shift per month would be expected of the plaintiff.
    f. That he would have the assistance of a nurse practitioner in his work.
    g. That his work assignments and responsibilities would be the same as other physicians working for Waraich.
    h. Adequate recovery and sleep periods during ER work would be afforded to the plaintiff.
    i. Waraich would ensure Plaintiff the necessary amount of ER hours required by law to allow the plaintiff Board Certification in Emergency Medicine.
    j. Plaintiff would receive adequate group health insurance coverage within 30 days of his start date.
    k. Plaintiff was personally assured by Waraich that any extra locum tenens shifts he agreed to cover at Aiken Regional Medical Center, where Waraich also had contracts, that he would receive 100% of the wages paid, but that he was being hired for service at BCH.

31. That such written and oral representations and others were material, false, knowingly and maliciously made and made for the purpose of inducing the plaintiff to accept the position in reliance thereof and to proximately cause him to sustain serious and permanent damages.

32. That the same constitutes fraud and deceitful conduct for which Defendant Waraich is liable.

33. Plaintiff's damages include loss of earnings, embarrassment, humiliation and emotional distress. Plaintiff is further entitled to punitive damages to be assessed by a jury.

**FOR A THIRD AND SEPARATE CAUSE OF ACTION AND AS A PENDENTE STATE CLAIM**
(Violation of the Unfair Trade Practices Act)
(19-5-10 of the Code of Laws of South Carolina)

34. Plaintiff realleges paragraphs 1-33 aforesaid.

35. Once the plaintiff accepted his position with Waraich, he immediately became concerned that he was being treated differently from other physicians under Waraich's employ and that he was being held in a virtual state of peonage with other foreign physicians under Waraich's control.

36. Plaintiff immediately knew that Waraich's promises were false and not only was he required to perform more hours of service, treat patients out of his field and to perform service which could jeopardize patients and create malpractice claims, but that he could not as a reasonably prudent physician carry out Waraich's demands.

37. When plaintiff complained, he was made to comply with all of Waraich's demands and threatened with deportation or loss of his VISA as well as having a large money judgment personally filed against him.

38. Other foreign VISA physicians have been treated the same way by Waraich over the years and it is a custom and deceptive practice capable of repetition and has an effect on commerce and the public.

39. Such conduct violates the South Carolina Unfair Trade Practices Act (UTPA) and as a direct and proximate result of the same the Plaintiff is entitled to an award of actual damages and punitive damages as alleged herein before.

### FOR A FOURTH AND SEPARATE CAUSE OF ACTION AND AS A PENDENT STATE CLAIM
(Intentional Infliction of Emotional Distress)

40. Plaintiff realleges paragraphs 1-39 aforesaid.

41. That defendant Waraich on a regular and continuing basis during the entire time of plaintiff's service threatened, harassed and held the plaintiff in a virtual state of servitude and peonage, constantly reminding him of the consequences he would suffer as others had in the past by having his VISA revoked, being deported and having his medical career ruined should he refuse any of Waraich's demands.

42. When Barnwell County Hospital declared bankruptcy and fired the plaintiff and Waraich in the spring of 2012, Waraich's domination intensified and the plaintiff was informed by Waraich that he was being forced to relocate his services entirely to another location where he would be forced to travel extensively to other hospitals and made to work for excessive periods of time. The Plaintiff was forced to perform services other than those agreed to and care for a caseload of patients that was extremely excessive and demanding. As the only VISA physician, the Plaintiff was scheduled to work far in excess of every other American physician causing the Plaintiff extreme stress and mental anguish, and even when it was obvious that it would be impossible for the Plaintiff to continue in Waraich's employment he was threatened with a $250,000 lawsuit and deportation.

43. The constant and continuing demands, threats and virtual state of servitude which continued on an ongoing basis is outrageous, atrocious and not to be tolerated in a civilized society and constitutes the intentional infliction of emotional distress for which Waraich is liable.

44. As a direct and proximate cause of the outrageous conduct described herein, the Plaintiff has sustained extreme and continuing emotional distress, loss of reputation, humiliation and embarrassment and further is entitled to an award of punitive damages against the Defendant, Waraich.

WHEREFORE plaintiff prays for judgment against the defendant Waraich in the sum of thirty million dollars ($30,000,000.00) actual damages together with an appropriate award of punitive damages in the discretion of a jury as well as an award of reasonable attorney's fees and costs.

**[Signature block on following page]**

                              J. LEWIS CROMER & ASSOCIATES, L.L.C.

                              BY:     s/J. Lewis Cromer
                                      J. Lewis Cromer (#362)
                                      Tandi D. Ross (#10370)
                                      Julius W. Babb, IV (#10500)
                                      1522 Lady Street
                                      Post Office Box 11675
                                      Columbia, South Carolina 29211
                                      Phone  803-799-9530
                                      Fax     803-799-9533

                                      Attorneys for Plaintiff

July 9, 2012