**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| Miguel Antonatos, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 1:12-cv-01905-JMC |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Asfar Waraich, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant Asfar Waraich's ("Waraich") Motion to Dismiss [Dkt. No. 9] Plaintiff Miguel Antonatos's ("Antonatos") Complaint [Dkt. No. 1]. For the reasons discussed below, the court denies the motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Antonatos is a Panamanian citizen and a medical doctor who received his medical degree and completed his residency in the United States. Complaint ¶ 1 [Dkt. No. 1]. In the winter of 2010, Antonatos responded to a written advertisement seeking a physician to join Palmetto Hospitalist Associates P.A. ("PHA"), a firm owned by Waraich, who is a gastroenterologist and surgeon in Barnwell County. *Id.* ¶¶ 2, 6. The position in Barnwell County allowed Antonatos to participate in a federal program that allows foreign doctors to attain permanent visa status and practice medicine in the United States by working under the sponsorship of an American physician in an underserved area for a certain number of years. *Id.* ¶¶ 1, 5, 7. Following an interview with Waraich, in which Waraich personally verified the promises made in the advertisement and further made promises regarding the requirements of the position, Antonatos

1

signed a contract of employment with PHA. [1] *Id.* ¶¶ 8, 9.  The five-year employment contract provided for a yearly base salary of $185,000 during the first year, and $200,000 for the remaining years.  *See* Employment Agreement ¶ 4.1 [Dkt. No 7-4].

Antonatos alleges that, upon starting his new position, he was required to perform duties far beyond those referenced in the job description and those personally affirmed by Waraich in the interview.  *Id.* ¶ 10.  Antonatos claims that Waraich required him to work an excessive number of hours, to treat excessively large numbers of patients, and to travel out-of-town to other hospitals after being awake for over 24 hours.  *Id.* ¶ 13.  The travel under these conditions placed Antonatos and others at risk of accidents.  *Id.*  Antonatos was not provided a nurse practitioner or other professional assistance as promised, and he was not properly compensated for the additional work.  *Id.*  As a result of this grueling schedule imposed by Waraich, Antonatos states that  he suffered "a total loss of any personal life and diminution in his ability to practice medicine together with a constant risk of liability for medical malpractice because of having to perform things out of his specialty and without the proper assistance."  *Id.*  Antonatos claims that in the spring of 2012 his conditions further worsened due to the bankruptcy of the Barnwell County Hospital.  Following the bankruptcy, Antonatos was forced to travel to more distant hospitals, resulting in even more scheduled work hours without proper compensation.  *Id.* ¶ 14.  Antonatos further alleges that the duties and hours required of him and the conditions of his work were well beyond those required of the doctors in Waraich's employ who were United States citizens.  *Id.* ¶¶ 11, 15.

Antonatos asserts that when he complained of his working conditions and disparate treatment, Waraich "threatened that if he did not do everything Waraich asked him to on

---

[1] The Employment Agreement [Dkt. No. 7-4] attached to Waraich's Motion to Dismiss lists July 1, 2011, as the effective date.

Waraich's own terms, then Antonatos would be subject to a lawsuit and also subject to having his visa revoked and being deported." *Id.* ¶ 12. When Antonatos "notified Waraich that he was seeking other employment due to impossibility of performance[,] Waraich responded by threatening to have Antonatos's visa revoked and then later commenced a $250,000 lawsuit" against Antonatos. *Id.* ¶¶ 16, 17. Antonatos was ultimately successful in finding alternative employment with a qualified healthcare facility that accepted the transfer of his visa responsibilities, but Antonatos claims he still fears Waraich's interference with "the natural immigration process." *Id.* ¶ 18.

In August 2012, Antonatos filed the instant complaint against Waraich alleging a violation of the forced labor provisions of the Trafficking Victims Protection Reauthorization Act ("TVPRA" or "The Act"), 18 U.S.C. § 1589, as well as three pendant state law causes of action including fraud in the inducement, violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* (2012)[2], and intentional infliction of emotional distress. Under the federal claim, Antonatos alleges that Waraich "knowingly obtained the services of the plaintiff by means of threats [and] false inducements and has forced the plaintiff to accept his condition of peonage and servitude to his great damage as a reasonable person with the same background and in the same circumstances would also have done." *Id.* ¶ 21. Additionally, Antonatos claims that Waraich's threats constituted an abuse of the immigration and naturalization laws as well as the legal process generally. *Id.* ¶ 22.

Antonatos suggests that the alleged fraudulent treatment he received from Waraich is a repeated practice which Waraich has employed against similarly situated foreign doctors. *Id.* ¶¶ 5, 11, 19. Antonatos states that "for the last several years the defendant Waraich has advertised

---

[2] Antonatos states claim under Unfair Trade Practices Act in his complaint, but misstates the citation for the Act as "19-5-10".

and solicited foreign doctors to be hired by him and his professional association." *Id.* ¶ 5. Antonatos claims that Waraich has treated other Visa Doctors in a similar manner to which he was treated over the past years. Antonatos asserts that this conclusion is supported by court documents. *Id.* ¶ 19. Waraich allegedly threatened Antonatos by informing him that "the last VISA physician that didn't comply with his demands was sent back to Africa and was sued for $250,000." *Id.* Antonatos further states that in contrast to the treatment he received, "American doctors who performed the same types of services under Waraich's employ were not required to perform duties beyond their job description or work an excessive number of hours." *Id.* ¶ 11. Antonatos asserts that "as a direct and proximate result of Waraich's actions, "Waraich has violated the law and has caused the plaintiff to lose earning capacity and future earnings, has injured and damaged plaintiff's personal and professional reputation, [and] has inflicted upon the plaintiff severe and continuing emotional distress." *Id.* ¶ 24.

In September 2012, Wariach filed the instant Motion to Dismiss [Dkt. No. 7] asserting that Antonatos fails to state a claim for violation of 18 U.S.C. § 1589 and arguing for dismissal of his federal claim and the pendant state law claims. Waraich contends, in the alternative, that if the court denies his motion to dismiss, the court should abstain from hearing this matter and stay proceedings pending the outcome of Waraich's breach of contract cause of action currently pending in a South Carolina state court since the pendant state claims in Antonatos's federal complaint are identical to counterclaims raised in the state court action. *See* State Court Answer and Counterclaim [Dkt. No. 7-3]. Antonatos filed a Response in Opposition to Waraich's Motion to Dismiss [Dkt. No. 9] and Waraich filed a Reply [Dkt. No. 11].

## STANDARD OF REVIEW

For a complaint to survive a motion to dismiss, the Federal Rules of Civil Procedure require that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial

notice.[3]  *Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  Additionally, the

court may consider documents attached to the motion to dismiss, "so long as they are integral to

the complaint and authentic." [4]  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.

2009).  Although the court must accept the plaintiff's factual allegations as true, any conclusory

allegations are not entitled to an assumption of truth, and even those allegations pled with factual

support need only be accepted to the extent that "they plausibly give rise to an entitlement to

relief." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Antonatos alleges a violation of 18 U.S.C. § 1589, the section of the Trafficking Victims

Protection Reauthorization Act ("TVPRA" or "The Act") entitled "Forced Labor."  The Act

provides in relevant part:

> (a) Whoever knowingly provides or obtains the labor or services of a person by
> any one of, or by any combination of, the following means . . .
>
> > (2) by means of *serious harm* or threats of *serious harm* to
> > that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal
> > process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person
> > to believe that, if that person did not perform such labor or services, that
> > person or another person would suffer *serious harm* or physical restraint,

---

[3] The court takes judicial notice of Waraich's state court suit against Antonatos for breach of
contract.

[4] The court considers the Employment Agreement since it is integral to Antonatos's complaint,
Antonatos has referred to the agreement in his complaint, the document bears Antonatos's
signature, and Antonatos has not contested the authenticity of the agreement. *See American
Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004) ("[W]e have
held that when a defendant attaches a document to its motion to dismiss, a court may consider it
in determining whether to dismiss the complaint if it was integral to and explicitly relied on in
the complaint and if the plaintiffs do not challenge its authenticity.") (quoting *Phillips v. LCI
Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)).

shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a)-(b) (emphasis added). The TVPRA was amended in 2008 to provide

a civil remedy for violations of the Act:

> An individual who is a victim of a violation may bring a civil action against the perpetrator…in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595. Section 1589 requires that the person obtaining the labor or services by any of

the prohibited means must act with knowledge that he is doing so. *See United States v.*

*Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) ("Section 1589 contains an express *scienter*

requirement").

Antonatos asserts in his complaint that Waraich violated Section 1589(a)(2) and Section

1589(a)(4) by threatening serious harm and by engaging in a scheme or plan intended to cause

Antonatos to believe that if he did not continue his employment, he would suffer serious harm.

Antonatos also claims that Waraich violated Section 1589(a)(3) by abusing or threatening the

abuse of the law, particularly the immigration and naturalization processes.

Waraich contends that Antonatos has failed to state a claim under Section 1589(a)(2) and

under Section 1589(a)(4) because the harm alleged is not sufficiently serious to constitute a

violation of those provisions. Serious harm is defined under the statute as:

> Any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). Antonatos claims that when he complained about his poor work

conditions and informed Waraich of his intention to find alternative employment, Waraich

threatened to have Antonatos's visa revoked and to have him deported. Complaint ¶ 12 [Dkt.

No. 1].    Antonatos also states that Waraich threatened him with a $250,000 lawsuit pursuant to the liquidated damages clause of his employment agreement.  *Id.* ¶ 17.  Waraich contends that a reasonable person under these circumstances would not have perceived these threats as Antonatos perceived them.  Waraich also makes the argument that Antonatos's own actions in leaving his employment is evidence that Waraich's threats were not "serious", as defined by the statute.

The court finds that the facts alleged, taken as true, are sufficient to establish a threat of serious harm under Section 1589(a)(2) and under Section 1589(a)(4), as these provisions include psychological, financial, and reputational harm.  A factual determination of whether an objectively reasonable person with the same background as Antonatos and under his same circumstances would have felt compelled to continue performing labor would be premature at this stage of the litigation.

Waraich also argues generally that Antonatos's claim does not fit the definition of forced labor under the TVPRA.  Waraich contends well-paid doctors who have been misled as to the conditions of their employment and threatened with deportation and other legal consequences are not covered under the general scope of the statute.    The fact that Antonatos was paid a six-figure salary is not necessarily dispositive of whether Waraich violated the TVPRA.[5]

---

[5] The court notes that the facts of this case, involving a well-paid, educated professional with no allegation that his freedom of movement was restricted stands in stark contrast to the cases brought pursuant to the TVPRA reviewed by this court.  *See e.g. Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 111 (D.D.C. 2012) (finding threats of deportation constituted abuse of the legal process intended to induce involuntary servitude where domestic servant was lured to the United States with promises of reasonable working conditions, educational opportunities, and decent pay but upon her arrival, employer/defendants confiscated her passport, held her in isolation, and threatened calls to the FBI to have her deported); *Ramos v. Hoyle*, 08-21809-CIV, 2008 WL 5381821 (S.D. Fla. Dec. 19, 2008) (denying defendants' motion to dismiss where defendants retained control of the plaintiffs' passports and immigration papers, restricted the plaintiffs' food, increased their work responsibilities, failed to pay them their promised wages, forced them to

The substance of Antonatos's claim is that Waraich knowingly misled him to enter a fraudulent employment situation with the intention of threatening Antonatos with legal consequences, including deportation, if he were to challenge his work conditions. Antonatos has alleged that the threat of a lawsuit and the threat of having his visa revoked were intended to and did cause him to remain in the employ of Waraich for at least some amount of time. As such, Antonatos may be afforded protection under the TVPRA.

The Act was passed in 2000 at which time Congress found that trafficking was a "growing transnational crime [that] includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide." Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 102(b)(3), 114 Stat. 1466. The Act instructs that trafficking involves violations of labor and immigration laws as well as fraud and extortion. *Id.* at 1467. Section 1589 entitled "Forced Labor" specifically includes labor obtained "by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. 1589(a)(3). "Abuse or threatened abuse of law or legal process" is defined as:

> The use or threatened use of a law or legal process, whether administrative, civil, or criminal in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1). The immigration and contract laws were not designed to perpetrate fraud, and thus, Antonatos's allegations equate to a claim of an abuse or threatened abuse of the law or legal process. *See Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) ("Threatening deportation for violation of immigration laws clearly falls within the concept and definition of 'abuse of legal process' since the alleged objective for

---

live in a converted closet, threatened to report plaintiffs for detention and deportation if they tried to escape, and threatened to urge law enforcement and immigration officials to pursue plaintiffs if they ever escaped.)

such conduct was to intimidate and coerce Plaintiffs into forced labor.") (internal citations omitted)); *see also U.S. v. Calimlim,* 538 F.3d 706, 713 (7th Cir. 2008); *Ramos,* 2008 WL 5381821, at *4; *United States v. Garcia,* 2003 WL 22938040, at *4 (W.D.N.Y.2003); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d at 115.   Given the allegations of fraud pled by Antonatos and his assertions of the harm he suffered as a result, the court finds that Antonatos has stated a claim under the broad provisions of the TVPRA.

### Abstention

Waraich contends that, if the court denies the motion to dismiss, that it should abstain from hearing this matter and stay proceedings pending the outome of the previously filed complaint.  Wariach requests that the court abstain from hearing this case under the *Colorado River* abstention doctrine.   *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 (1976).

 In general, abstention doctrines are "extraordinary and narrow exception[s]" to a federal court's strict duty to exercise the jurisdiction conferred on it by Congress.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).  A plaintiff has a right to choose federal court so long as the court's jurisdiction extends to the subject matter of the case, and a federal court has a duty to accept such jurisdiction if it exists.  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358-59 (1989) (quoting *Willcox v. Consol. Gas Co. of N.Y.*, 212 U.S. 19, 40 (1909)).  Therefore, the abstention doctrines remain the exceptions, not the rule.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

Federal courts abstain in order to observe the dual principles of federalism and comity.  *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999).  Abstention is merely a form of deferring to the paramount interests of other sovereigns:  the states.  *Quackenbush*, 517 U.S. at

723.  However, the general rule is "that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005).  Thus, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).

The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits.  *Chase Brexton Health Servs., Inc.,* 411 F.3d at 463-64.  If it is established that parallel suits are occurring, "[t]he district court must carefully balance several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'"  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 2 (1983).  The court should consider:

> (1)whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. In the end, however, abstention should be the exception, not the rule, and it may be considered only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.*

Waraich asserts that the factors weigh in favor of abstention because 1) the state court obtained jurisdiction first and abstention by the federal court would avoid piecemeal litigation; 2) the federal claim is based on the underlying state claim and resolution against Antonatos in state court will moot the issues in federal court; and 3) the state court proceeding will adequately protect the parties' interests.  The court disagrees.

11

Abstention should be the exception, not the rule, and it may be considered only when "the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.* 460 U.S. at 28. That is not the case here. The state court proceeding does not include Antonatos's federal claim of forced labor under 18 U.S.C. § 1589. While the claims arise out of the same set of circumstances, the state court action will not resolve all of the issues of the parties. As a result, the court declines to abstain or grant a stay in this action.

## CONCLUSION

For the reasons stated above, the court **DENIES** Defendant Waraich's Motion to Dismiss [Dkt. No. 9]. The court further **DENIES** Defendant Waraich's request for the court to abstain from hearing this matter pending the outcome of the action filed in state court.


**IT IS SO ORDERED.**


*J. Michelle Childs*

United States District Judge

August 27, 2013
Greenville, South Carolina